IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LAWRENCE GREGORY BURNS,

                              Plaintiff,

   v.                                                   OPINION and ORDER

TRAVIS McCANN, BREANNA THEN,
RICKY HAGEN, DAN OATES,                       21-cv-302-jdp
and DOUGLAS BORGARO,

                              Defendants.[1]

---

Plaintiff Lawrence Gregory Burns, proceeding without counsel, is suing several correctional officers from the Eau Claire County jail under the Fourth Amendment. He alleges that officers used excessive force by stripping him down to his underwear and assaulting him in multiple ways. Defendants move for summary judgment, contending that no reasonable jury could find from the undisputed facts that any of them used excessive force.

I will grant the motion in part and deny it in part. Defendants removed Burns's clothes pursuant to a general policy for incoming arrestees, and Burns has not shown that defendants' conduct violated clearly established law, so defendants are entitled to summary judgment on that part of Burns's claim. But the parties dispute how much force the officers used and how much resistance Burns demonstrated, and I cannot resolve those disputes in the context of a motion for summary judgment. So I will deny defendants' summary judgment motion on Burns's claims that Travis McCann used a taser on Burns, Douglas Borgaro punched Burns, and the other officers failed to intervene to stop McCann from using the taser.

---

[1] I have amended the caption to include Borgaro's full name, as reflected in defendants' summary judgment materials.

BACKGROUND

The following facts are undisputed.

Each of the defendants was a correctional officer with the Eau Claire County sheriff's office and they were on duty in the early morning hours of September 16, 2019. Defendants were notified that an "uncooperative" arrestee was being brought to the jail, and the arresting officer requested assistance from jail officers.

Burns was the arrestee in question, and he had been arrested for disorderly conduct. When he arrived at the jail, he was talking loudly. He refused to give his name unless defendants released him.

Under jail policy, uncooperative arrestees are brought to a holding cell to be searched for weapons or other contraband. The arrestee remains in handcuffs, kneeling or lying down, for the safety of jail staff. The arrestee's outer clothes are removed so that they can be inventoried, and the arrestee can change into his jail uniform. After the search is complete, the handcuffs are removed, and the officers exit the cell.

In this case, the parties agree that defendants went through the above process with Burns, but they dispute many of the details. Neither side says that there is video evidence of the relevant events.

I will discuss additional facts as they become relevant to the analysis.

ANALYSIS

The uses of force at issue in this case occurred just after Burns was arrested, so the Fourth Amendment governs Burns's claims. *See Jump v. Village of Shorewood*, 42 F.4th 782, 792 (7th Cir. 2022). The basic question for an excessive force claim under the Fourth Amendment

is whether the officer used "greater force than was reasonably necessary." *Becker v. Elfreich*, 821 F.3d 920, 925 (7th Cir. 2016). This determination is made from the perspective of a reasonable officer in light of the totality of the circumstances known to the officer, without regard to the officer's intent or his subjective beliefs. *Williams v. Indiana State Police Dept.*, 797 F.3d 468, 472–73 (7th Cir. 2015); *Abbott v. Sangamon County, Ill.*, 705 F.3d 706, 724 (7th Cir. 2013). In assessing reasonableness, relevant factors include the relationship between the need for the use of force and the amount of force used, the extent of the plaintiff's injury, any effort made by the officer to temper or to limit the amount of force, the severity of the security problem at issue, the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. *Lombardo v. City of St. Louis, Missouri*, 594 U.S. 464, 466–67 & n.2 (2021).

When the defendant is raising a qualified immunity defense, as defendants in this case are, the plaintiff must show that the defendants violated clearly established law, which means that the law was sufficiently clear at the time of the alleged violation that every reasonable official would understand that what he is doing is unconstitutional. *Tousis v. Billiot*, 84 F.4th 692, 698 (7th Cir. 2023). The plaintiff can do this in one of three ways: (1) point to a closely analogous, binding case that established a right to be free from the type of force the officers used; (2) identify a clear trend in the case law showing that the recognition of the right by controlling precedent is merely a question of time; or (3) show that the force was so plainly excessive that, as an objective matter, the officers would have been on notice that they were violating the Fourth Amendment, even without case law involving similar facts. *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 620–21 (7th Cir. 2022); *Chelios v. Heavener*, 520 F.3d 678, 691–92 (7th Cir. 2008).

3

Burns's claims fall into three categories: (1) the removal of his clothes; (2) the uses of force to obtain control over him; and (3) the failure of officers to intervene to stop the uses of force.[2] I will consider each in turn.

## A. Removal of clothing

Defendants admit that Breanna Then and Ricky Hagen removed Burns's pants. Dkt. 145, ¶ 60. Defendants say they did that pursuant to a jail policy to remove an arrestee's clothing except for his undergarments "so that the arrestee's clothing could be inventoried with his or her personal property, and so the arrestee could change into a Jail uniform." *Id.*, ¶ 8.

A strip search of an arrestee violates the Fourth Amendment if the search is unreasonable in light of the justification for the search and the scope, manner, and place of the search. *See Henry v. Hulett*, 969 F.3d 769, 784 (7th Cir. 2020). A practice of conducting strip searches on incoming arrestees may be reasonable even without particularized suspicion of hidden contraband. *See Florence v. Bd. of Chosen Freeholders of County of Burlington*, 566 U.S. 318, 324 (2012); *Fonder v. Sheriff of Kankakee County*, 823 F.3d 1144, 1146–47 (7th Cir. 2016).

*Florence* and *Fonder* are not directly on point because those cases held that it is reasonable to perform a strip search on an arrestee being placed in general population, and neither side in this case says whether Burns was ever placed in general population. But Burns does not dispute the existence of the jail policy requiring the removal of his clothing, and he does not dispute defendants' averments that they left his undergarments on and left a jail uniform for him to

---

[2] Burns also says in his declaration that defendants gave him "no medical attention." Dkt. 159, ¶ 5. I did not allow Burns to proceed on a claim for failing to provide medical care because his complaint did not identify any medical care that he needed, and he did not describe any injuries that required medical care. Dkt. 113, at 2 n.2. Even in his summary judgment materials, Burns does not identify any medical care that he needed, so he has forfeited that claim.

4

wear after removing his pants. (The parties do not say whether officers also removed Burns's shirt.) So defendants had legitimate reasons for conducting the search, and the scope of the search did not extend beyond those reasons. But I need not decide whether the search was justified under the Fourth Amendment. Even if cases like *Florence* and *Fonder* leave some room for doubt, Burns cites no cases clearly establishing that the search was unreasonable, and I am not aware of any such authority. So I will grant summary judgment to defendants on this part of Burns's excessive force claim.

**B.  Uses of force**

Burns avers in his declaration that Travis McCann deployed a taser on the back of his neck and Douglas Borgaro "slammed" him onto the bed and punched him. Dkt. 159, ¶¶ 6, 8.[3] In his complaint, Burns also alleged that Borgaro sat on his back and Hagen held his head in a way that made it hard for him to breathe. Defendants deny that Borgaro sat on Burns's back and that any defendant obstructed his breathing. Dkt. 145, ¶¶ 35–41, 49. Burns says nothing in his brief or declaration about being unable to breathe or pressure on his back, so I will grant defendants' motion for summary judgment on those issues.

Defendants admit that they deployed a taser on Burns's shoulders, *id.*, ¶¶ 55–58, but they deny that Borgaro or any other officer punched Burns, *id.*, ¶ 62. At the summary judgment stage, I must credit the nonmoving party's version of events, so I must assume that defendants used both types of force. The question is whether it was clearly established that the uses of force were unreasonable.

---

[3] Burns also states more generally in his declaration that defendants "assaulted" him and "beat" him. Dkt. 159, ¶¶ 2, 5, 7–9, 14. A plaintiff must support his claim with "specific facts" in response to a motion for summary judgment, *see Daugherty v. Page*, 906 F.3d 606, 611 (7th Cir. 2018), so I have disregarded those conclusory allegations.

Defendants say that McCann deployed a taser because Burns physically resisted the officers' attempts to search Burns and remove his clothing by "tensing his body, attempting to turn his body over, and pulling his hands and arms in an apparent attempt to free himself." *Id.*, ¶ 46. Defendants also say that Burns failed to comply with repeated commands to stop resisting, and he ignored at least two warnings that McCann would deploy the taser if Burns did not comply. *Id.*, ¶¶ 50–53. Defendants do not offer a justification for punching Burns, presumably because they deny punching him.

Burns says in his declaration that he "did not resist or threaten the officers in any fashion." Dkt. 159, ¶ 14. Again, I must accept Burns's version of the facts as true in deciding defendants' summary judgment motion. It is clearly established that an officer may not punch or deploy a taser on a suspect who is not actively resisting. *See Dockery v. Blackburn*, 911 F.3d 458, 467 (7th Cir. 2018); *Stabenow v. City of Eau Claire*, 546 F. Supp. 3d 787, 798–99 (W.D. Wis. 2021) (collecting cases). So I must deny defendants' summary judgment motion on the issues whether Borgaro used excessive force on Burns by slamming him on the bed and punching him and whether McCann used excessive force by deploying a taser on Burns.

Defendants ask the court not to consider Burns's declaration because he did not submit proposed findings of fact or respond directly to defendants' proposed findings of fact. Burns should have complied with the court's summary judgment procedures, but I decline to disregard Burns's declaration in this case. The purpose of proposed findings of fact is to clearly identify which facts are disputed and undisputed. Burns's declaration serves that purpose by setting forth his version of events. The declaration is based on Burns's personal knowledge, and it is the only evidence that Burns submitted, so it did not require defendants or the court to scour

6

the record in search of factual disputes. In fact, defendants filed a response to Burns's declaration, *see* Dkt. 162, so there was no unfair prejudice to defendants.

**C. Failure to intervene**

Burns contends that each of the defendants should be held liable for failing to stop the excessive force. A defendant may be held liable for failing to stop another officer's use of excessive force if the defendant had reason to know that the other officer was violating the plaintiff's constitutional rights, and the defendant had a realistic opportunity to prevent the violation. *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005). "A realistic opportunity means a chance to warn the officer using excessive force to stop." *Miller v. Gonzalez*, 761 F.3d 822, 826 (7th Cir. 2014) (internal quotation marks omitted). It is generally for the jury to determine whether the plaintiff has proven the elements for a failure to intervene. *Abdullahi v. City of Madison*, 423 F.3d 763, 773–74 (7th Cir. 2005).

There is no duty to intervene to stop a use of lawful force, so the only uses of force that could trigger the duty to intervene are the deployment of the taser and the alleged punch. Defendants admit that McCann warned Burns multiple times that he was going to deploy the taser. A reasonable jury could infer that the warnings gave the other defendants—all of whom were present—a realistic opportunity to stop the use of force. And it would have been clearly established from cases like *Miller* and *Harper* that the other defendants had the duty to stop McCann from using a taser on a non-resisting arrestee, so I will deny summary judgment on that claim.

But the alleged punch is a different story. Burns does not allege that Borgaro announced that he was going to punch Burns or otherwise gave any indication to the other defendants of what he was about to do. Under these circumstances, no reasonable jury could find that the

7

other defendants had a reasonable opportunity to do anything to stop Borgaro. So I will grant defendants' summary judgment motion on this claim.

ORDER

IT IS ORDERED that defendants' motion for summary judgment, Dkt. 138, is GRANTED in part and DENIED in part. The motion is DENIED as to the following claims under the Fourth Amendment:

1. Travis McCann deployed a taser on Burns.

2. Douglas Borgaro punched Burns.

3. Defendants Brenna Then, Ricky Hagen, Dan Oates, and Douglas Borgaro failed to intervene to stop McCann from deploying a taser.

The motion is GRANTED as to the following claims under the Fourth Amendment:

1. Then and Hagen took Burns's pants off.

2. Borgaro sat on Burns's back.

3. Hagen restricted Burns's breathing.

4. Any defendant otherwise used excessive force against Burns or failed to intervene to stop another defendant from using excessive force.

Entered January 8, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge